UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

O&G ENERGY, LLC, and )
THE COURTLAND COMPANY, LLC, )
)
)
Plaintiffs, ) Civil No. 11-147-ART
)
v. )
) **MEMORANDUM OPINION**
RIMKUS CONSULTING GROUP, LLC, ) **& ORDER**
et al., )
)
Defendants. )

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiffs sued alleging that the defendants made various misrepresentations that fraudulently induced the plaintiffs to enter into a contract for expert witness services. But, that contract has an enforceable forum selection clause directing any such case to be brought in Harris County, Texas. Thus, the defendant's motion to dismiss must be granted.

## BACKGROUND

This case is a classic example of litigation born from litigation. In 2006, the plaintiffs, O&G Energy, LLC and The Courtland Company, LLC (collectively, "O&G"), began construction of a natural gas processing plant in Floyd County, Kentucky. Compl., R. 1-1 ¶ 7. Once completed, this plant would clean natural gas to make it marketable to consumers. *Id.* During the construction process, O&G hired Energy Management and Services Company ("EMS") in 2007 to provide "engineering and construction management services" for the gas cleaning plant. *Id.* ¶ 8. Unfortunately for O&G, it took two years and

"substantial sums of money" before O&G realized that EMS would be "unable to properly assemble and get the gas processing plant operational." *Id.* ¶ 9.

O&G then began planning a different kind of project: suing EMS for breach of contract. *Id.* ¶ 11. After hiring law firm of McBrayer, McGinnis, Leslie & Kirkland to represent it at trial, O&G solicited Rimkus Consulting Group, Inc. to serve as experts in the lawsuit. *Id.* Rimkus would be responsible for providing expert opinions on EMS's liability and O&G's damages based on "lost sales of gas, increased future sales of gas, loss of time value and other potential damages." *Id.*

During O&G's pre-contractual discussions with Rimkus, three of Rimkus's employees—Harmon Kirkpatrick, Guy Fincher, and Michael Wiseman—made several representations to O&G. *Id.* ¶ 12. According to O&G, these employees told O&G that all of them had experience providing expert witness services on comparable natural gas processing plants and that Kirkpatrick specifically had "extensive" expert witness experience with "amine units, nitrogen rejection units, dehydrators, and the assembly/integration and operation of natural gas processing plants comparable to the plant being constructed" by O&G. *Id.* The Rimkus employees also indicated that a court had never disqualified any of them from serving as an expert. *Id.* ¶ 14. Rimkus allegedly repeated these representations to O&G and its counsel during a visit to O&G's processing plant. *Id.* ¶ 15.

Based on these representations, O&G's counsel and Rimkus entered into a written agreement in which Rimkus would provide expert witness services in O&G's lawsuit against EMS. *Id.* ¶ 18. The agreement explicitly named the O&G Parties as third-party beneficiaries. *Id.* Like many commercial contracts, this agreement contained a forum selection clause and a choice of law provision: "Venue for any legal action brought pursuant

to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding." R. 5-2 at 3. Rimkus and its employees got to work immediately, reviewing the EMS opposing expert reports and preparing its own opinions and conclusions for O&G. Compl., R. 1-1 ¶ 19.

As expected, EMS deposed the Rimkus experts during pretrial discovery. *Id.* ¶ 20. What was unexpected, however, were the revelations that Kirkpatrick "had no professional experience" with the specific areas of gas processing expertise in which he had earlier claimed to have extensive experience that Wiseman had previously been disqualified as an expert, and that Rimkus had used an erroneous method to calculate O&G's damages. *Id.*

At this point, O&G had already paid nearly half amount the due to Rimkus under their expert services agreement. Not only did O&G refuse to pay the remaining balance, but O&G wanted back the amount that it had already paid. O&G sued Rimkus and the three employees (collectively, "Rimkus") in Floyd County Circuit Court, Kentucky. *See* Compl., R. 1-1. O&G alleges that Rimkus made several misrepresentations that fraudulently induced O&G to enter into the Agreement, including that none of Rimkus's employees had ever been disqualified from testifying as experts, that Rimkus's employees had experience with natural gas processing plants as expert witnesses. *Id.* ¶¶ 21–23. O&G also alleges that Rimkus miscalculated O&G's damages in the underlying litigation, "greatly diminish[ing]" Rimkus's credibility and thus the damages O&G received. *Id.* ¶ 20.

The Rimkus Parties, in turn, removed the case to this Court based on diversity jurisdiction. Notice of Removal, R. 1 at 1. Based on the forum selection clause in the written agreement and Texas state law, Rimkus subsequently filed a motion to dismiss or, in

3

the alternative, transfer this case to the United States District Court for the Southern District of Texas. R. 3.

## DISCUSSION

**I.     Rimkus's Motion to Dismiss Based on the Forum Selection Clause**

Rimkus argues that the Court must dismiss O&G's misrepresentation and fraudulent inducement claims because the forum selection clause in the contract establishes exclusive venue for these claims in Harris County, Texas.[1]  Because the scope of the forum selection clause is broad enough to cover O&G's claims and it is enforceable, O&G's claims must be dismissed.  As such, the Court need not reach Rimkus's other arguments for dismissal.

    *A.     The forum selection clause covers O&G's fraudulent inducement and misrepresentation claims.*

O&G argues that its tort claims for fraud and misrepresentation are not covered by the forum selection clause.  Pls.' Resp., R. 4-1 at 4.  O&G points to the fact that its claims are based on Rimkus's pre-contractual representations, not the terms of the contract itself.  Therefore, O&G asserts, these claims are not brought "pursuant to" the contract.  *See* R. 5-2 at 3 ("Venue for *any legal action brought pursuant to this contract* shall be in Harris County, Texas.") (emphasis added).

---

[1] Although the parties have submitted affidavits and a copy of the agreement containing the forum selection and choice of law provisions, Rimkus's motion to dismiss does not need to be converted to a summary judgment motion. Generally, when a court considers "matters outside the pleadings" in ruling on a Rule 12(b)(6) motion, Rule 12(d) requires the motion to "be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "A copy of a written instrument that is an exhibit to a pleading," such as the written agreement in this case, is "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that the defendant attached to the motion to dismiss as part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan). Therefore, the written agreement containing the forum selection and choice of law provisions is not a matter outside the pleadings and thus may be considered by the Court in ruling on the motion to dismiss. Furthermore, to the extent the parties rely on new information contained in the affidavits attached to their pleadings, the Court has not considered and does not rely on them in ruling on this motion to dismiss. *Cf. Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993) (holding that the affidavits attached to the parties' pleadings were not matters outside the pleadings as long as they "added nothing new" to the complaint and "did not rebut, challenge, or contradict anything" in the complaint).

But what does "any legal action brought pursuant to this contract" mean?  Before getting to that question, the Court must determine what law governs the interpretation of the forum selection clause.  Here, federal law governs whether the forum selection clause is enforceable.  *Compare Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306 (6th Cir. 2007) (holding that state law governs the enforceability of a forum selection clause in a diversity suit "when the clause is raised as the sole basis for personal jurisdiction over the defendant") *with Wong v. PartyGaming Ltd.*, 598 F.3d 821, 828 & n.6 (6th Cir. 2009) (distinguishing *Preferred Capital* and holding that federal law governs the enforceability of a forum selection clause in a diversity suit in which the clause is not raised as the sole basis for personal jurisdiction over the defendant).  But what about interpretation of the clause, which is a "separate issue" from its enforceability?  *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990) (Posner, J.).  The Sixth Circuit has not yet decided what law governs the interpretation question, and the Court need not decide it today.  Here, the forum selection clause covers O&G's claims regardless of whether they are analyzed under federal common law, under Texas state law if the choice of law provision applies to O&G's claims, or under Kentucky state law if the choice of law provision does not apply to O&G's claims.

Now back to interpreting the clause itself.  As with any legal text, interpretation begins with the plain language of the forum selection clause.  According to Black's Law Dictionary, the term "pursuant to" has three definitions: "(1) in compliance with; in accordance with; under; (2) as authorized by; under; (3) in carrying out."  Black's Law Dictionary 615 (9th ed. 2009); *see also* Merriam-Webster's Collegiate Dictionary 950 (10th ed. 1999) (defining "pursuant to" as "in carrying out; in conformity with; according to").

This definition makes clear that "any legal action brought pursuant to" the O&G-Rimkus contract includes any claims arising "under" the terms of the contract, from "carrying out" the contract, or as a result of the contract. This language therefore covers claims "growing out of the contractual relationship" between O&G and Rimkus. *Coastal Steel Corp. v. Tilghman*, 709 F.2d 190, 203 (3d Cir. 1983), *abrogated on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989); *accord Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) ("The better general rule, we think, is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties."); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (Posner, J.) (concluding that misrepresentation and fraudulent inducement claims fall within the scope of a forum selection clause because "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes")

Indeed, federal courts have routinely held that similar—and sometimes even more narrowly worded—forum selection clauses encompass allegations of misrepresentation and fraudulent inducement. *See, e.g., Wong*, 589 F.3d at 825 (applying a forum selection clause stating "any disputes shall be subject" to a particular jurisdiction to claims for breach of contract and pre-contractual misrepresentation); *Lambert*, 983 F.2d at 1121 (holding that a forum selection clause establishing an exclusive venue for "any action . . . brought to enforce [the] terms and conditions" of the contract encompassed claims for misrepresentation and unfair business practices). Courts have also held that similarly worded clauses include

6

antitrust, RICO, and unfair competition claims. *See, e.g.*, *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (holding that the language "any suits or causes of action arising directly or indirectly from this agreement" encompassed federal antitrust claims); *Crescent Intern., Inc. v. Avatar*, 857 F.2d 943, 944–45 (3d Cir. 1988) (holding that the language "any litigation upon any of [the contract's] terms" covered RICO, fraud, unfair competition, and tortious interference claims"); *Braspetro Oil Servs. v. Modec*, 240 F. App'x 612, 616 (5th Cir. 2007) (rejecting the argument that a forum selection clause was inapplicable because the "alleged acts [of fraudulent inducement and misrepresentation] occurred before the execution of the [contract] and therefore did not arise out of the execution of the contract"). This result is only strengthened under Texas and Kentucky state law. *See, e.g., In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 550 (Tex. 2002) (holding that fraudulent inducement is a dispute involving the contract itself); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (holding that fraudulent inducement and misrepresentation claims "arise[] solely in the context of a contract and require[] the existence of a contract as part of [their] proof"); *Calihan v. Power Mktg. Direct, Inc.*, 2007 WL 625125, at *3 (Ky. App. Mar. 2, 2007) (applying the language "any action, claim or demand arising under or as a result of" the contract to a fraudulent inducement claim); *Ky. Farm Bur. Mut. Ins. Co. v. Henshaw*, 95 S.W.3d 866, 868 (Ky. 2003) (holding that a forum selection clause applied to a civil rights claim because the relationship underlying the claim was established by the contract and the contract would likely "influence any subsequent litigation").

Given this weight of authority, it is perhaps unsurprising that O&G does not identify a single case to buttress its position that contract-related claims of fraudulent inducement and

7

misrepresentation are not covered by a clause with language similar to this one. Nor does O&G offer any reasons beyond its bare assertion that this forum selection clause does not cover its claims. Consequently, the forum selection clause covers O&G's fraudulent inducement and misrepresentation claims.

### B. *The forum selection clause is enforceable.*

O&G has not satisfied its burden of showing that the forum selection clause is unenforceable. Under federal law, a forum selection clause that "exclusively" selects a jurisdiction in which to bring disputes must be enforced unless it is unreasonable. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994); *see also The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 2, 15 (1972) (holding that a forum selection clause selecting an exclusive venue for disputes must be enforced unless the clause is unreasonable or unjust). There is no question that the forum selection clause in this case is mandatory rather than permissive. The clause states that "any legal action brought pursuant to this contract *shall* be in Harris County, Texas." R. 5-2 at 3 (emphasis added). As the Sixth Circuit has made clear, use of the word "shall" establishes exclusive venue in the designated forum. *See, e.g., Gen. Elec. Co.*, 29 F.3d at 1099 (holding that a forum selection clause was mandatory where it stated that the "[p]lace of jurisdiction for all disputes arising in connection with the contract *shall* be at the principal place of business of the supplier") (emphasis added). Therefore, the forum selection clause is binding unless its enforcement is unreasonable.

And it is not unreasonable to enforce the forum selection clause here. Under federal law, mandatory forum selection clauses must be enforced "absent a strong showing that [they] should be set aside." *Wong*, 589 F.3d at 826 (quoting *Carnival Cruise Lines v. Shute*,

499 U.S. 585, 587 (1991)). The party opposing the forum selection clause—in this case, O&G—has the burden of making this strong showing. *Id.* at 828 (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)). O&G can clear this threshold only by establishing that (1) the clause was obtained by "fraud, duress, or other unconscionable means," (2) the chosen forum would "ineffectively or unfairly handle the suit," or (3) the chosen forum would be "so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999).

O&G does not allege that inclusion of the forum selection clause was itself "the product of fraud," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974), and does not offer "any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the agreement." *Wong*, 589 F.3d at 828 (quoting *Preferred Capital, Inc.*, 453 F.3d at 722). Therefore, O&G's "general claims of fraud . . . do not suffice to invalidate the forum selection clause" *Id.* (quoting *Preferred Capital, Inc.*, 453 F.3d at 722) (internal citations omitted). Moreover, O&G neither alleges that the Southern District of Texas would "ineffectively or unfairly handle" this lawsuit nor that it would be "so seriously inconvenient" as to be unjust. Therefore, the forum selection clause is valid and enforceable.

### C. *Rimkus has not waived its right to enforce the forum selection clause by removing the case.*

O&G argues that, even if the forum selection clause applies and is enforceable, Rimkus has waived its right to challenge venue because it removed this case to federal court. *See* Pls.' Resp., R. 4-1 at 5–7. In support of its waiver argument, O&G relies on cases in which removing a case waived the defendant's right to assert lack of personal jurisdiction

9

under Federal Rule of Civil Procedure 12(b)(2) or improper venue under Rule 12(b)(3). *See* Pls.' Resp., R. 4-1 at 5–7 (relying on *Bacik v. Peek*, 888 F. Supp. 1405 (N.D. Ohio 1993), *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953), and *Seaboard Rice Milling Co. v. Chicago Rock Island & Pacific Ry. Co.*, 270 U.S. 363 (1926)).

O&G's misplaced reliance on these cases is the result of confusing the various affirmative defenses available under Rule 12(b). It is true that certain affirmative defenses, including lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3), are waived if not raised in the defendant's initial responsive pleading. *English v. Dyke*, 23 F.3d 1086, 1090–91 (6th Cir. 1994) (citing Fed. R. Civ. P. 12(h)(1)).

But O&G's motion to dismiss is not premised on improper venue under Rule 12(b)(3). Indeed, as the Sixth Circuit has made clear, a forum selection clause cannot be enforced via a Rule 12(b)(3) challenge to improper venue. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002). Instead, it must be enforced under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Langley,* 546 F.3d at 369 (remanding for the district court to consider a properly brought motion to enforce the forum selection clause because the defendant had "not yet moved for enforcement of the clause through either a motion to transfer venue under [§ 1404] or a motion to dismiss under [Rule 12(b)(6)]"); *see id.* at 371 (Moore, J., concurring) (explaining the Sixth Circuit's "two procedural mechanisms that may be used to enforce a valid forum-selection clause: (1) a motion to dismiss under [Rule 12(b)(6)], and (2) a motion to transfer"). This is precisely what Rimkus has done here. R. 3-1 at 5.

Unlike the Rule 12(b)(3) defense of improper venue, Rule 12(h)(2) permits a Rule 12(b)(6) motion to be "timely made as late as trial." *Ausel v. Unisys Corp.*, 129 F.3d 1263,

1997 WL 720427, at *2 (6th Cir. 1997) (unpublished table decision); *see also Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 610–11 (6th Cir. 1995) (holding that Rule 12(b)(6) motions are "protected from waiver through trial"); *Silva v. Encyc. Britannica, Inc.*, 239 F.3d 385, 388 (1st Cir. 2001) ("[A] motion to dismiss [under Rule 12(b)(6)] based on a forum-selection clause may be raised at any time in the proceedings before disposition on the merits."); *Spectracom, Inc. v. Tyco Intern., Inc.*, 124 F. App'x 75, 77 (3d Cir. 2004) (holding that, by removing the case, defendants did not waive their right to enforce a forum selection clause through a Rule 12(b)(6) motion to dismiss). And because a motion to dismiss can be raised as late as trial, removal is neither a barrier to raising it nor a waiver of the opportunity to raise it. Consequently, Rimkus's removal of the case has not waived its right to enforce the forum selection clause.

## II. Rimkus's Other Arguments

In its motion, Rimkus makes two other arguments. First, Rimkus argues that O&G's claims must be dismissed because the contract's choice-of-law clause requires Texas law to be applied to this dispute and O&G has not complied with the Texas Certificate of Merit Statute in filing its complaint. *See* Defs.' Mot. to Dismiss, R. 3-1 at 10–14. Second, in lieu of dismissal, Rimkus asks the Court to transfer this case under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Texas, Houston Division, because the forum selection clause establishes Harris County as the proper venue. *See id.* at 14–23. Because the forum selection clause mandates dismissal of O&G's claims, however, the Court will not opine on the merits of Rimkus's remaining arguments.

Rimkus offers an additional reason for dismissal in its reply brief: the agreement's disclaimer-of-reliance provision bars any claims for misrepresentation or fraudulent

11

inducement. Defs.' Reply, R. 5 at 11–12. Because Rimkus made this argument for the first time in its reply brief and O&G has not had an opportunity to respond to it, this argument is waived and the Court will not consider it. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (holding that a party waived an issue before the district court by first raising it in her reply to a response and the other side was "not afforded a response to this reply").

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The defendant's motion to dismiss, R. 3, is **GRANTED**. Therefore, this case is **DISMISSED WITHOUT PREJUDICE**.

(2) The defendant's motion to transfer, R. 3, is **DENIED AS MOOT**.

(3) This case is **STRICKEN** from the Court's active docket.

This the 12th day of December, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge